**COMMONWEALTH OF PENN-SYLVANIA**

v.

**Leonard A. CIVILL.**

**Civ. A. No. 70–632.**

United States District Court,
W. D. Pennsylvania.

June 17, 1970.

## OPINION

GOURLEY, Senior District Judge:

This is a Petition seeking the removal, pursuant to Section 1443 of Title 28 of the United States Code, of a criminal proceeding pending in the Criminal Division of the Court of Common Pleas of Allegheny County, Pennsylvania. 'Alternatively, declaratory relief is sought under the Declaratory Judgment Act, 28 U.S.C. § 2201, or injunctive or "other appropriate relief" pursuant to the Civil Rights Statutes, 42 U.S.C. § 1983 and § 1985. Upon receipt and review of the Petition, the service and filing of which effectuates removal under 1446(e) of Title 28 of the United States Code, the Court entered an Order on the 5th day of June, 1970, summoning the relevant State records, directing the District Attorney of Allegheny County to file a responsive pleading and calling for oral argument upon the legal sufficiency of the Petition.

On June 10, 1970, the District Attorney filed a Motion to Dismiss, which should and will be treated as a motion to remand the criminal proceedings to the State jurisdiction. The Court entertained the oral argument of counsel upon the Petition and responsive Motion on June 11, 1970. Having reviewed the Petition, responsive Motion and State records, and upon consideration of the oral arguments of counsel and the law applicable herein, the Court is of the opinion that the instant criminal proceedings must be remanded to the State jurisdiction.

Petitioner has been indicted upon counts of conspiracy to obstruct public justice, attempted subornation of perjury, bribery and corrupt solicitation in the Criminal Division of the Court of Common Pleas of Allegheny County at No. 4403, June Sessions, 1970. The indictment is founded upon charges that petitioner, while acting as a Police Magistrate for the City of Pittsburgh, conspired with another to secure the dismissal of a criminal prosecution against one Wesley Rogers by offering a sum of money to two police officers to induce

them to testify falsely before a Grand Jury in the Rogers prosecution. The indictment of petitioner has been returned only after unusually prolonged preliminary proceedings wherein counsel for petitioner filed numerous motions and appeals from the denial thereof. Prior to indictment, the original Complaint, filed against petitioner before Police Magistrate Ernest Jones, was withdrawn, and a new Complaint has been filed before the Honorable Robert Van der Voort, specially sitting as a committing magistrate.

In the Petition filed in this Court, a right to relief is asserted to exist on the basis of the following allegations:

1. That the news media of Allegheny County have conspired with unidentified and unknown persons to prevent a fair trial, to prejudice the grand jury, to publicly disgrace petitioner, and to convict petitioner before the eyes of the public prior to trial.

2. That members of the prosecution have conferred ex-parte with members of the judiciary to the prejudice of petitioner.

3. That petitioner has been precluded from challenging the originally filed Complaint by virtue of the withdrawal of it and refiling of a new Complaint.

4. That petitioner has been precluded from challenging the legality of the proceedings before Judge Van der Voort, sitting as magistrate, by virtue of a Pennsylvania rule of procedure to the effect that the legality of proceedings before a magistrate may not be questioned subsequent to the granting of bail.

5. That Sections 6 and 9 of the Act of May 11, 1925, P.L. 561, 17 P.S. § 1276 and § 1279, are violative of the Fourteenth Amendment inasmuch as said provisions require the selection of jurors from those who are "taxed" and appear upon "taxable" lists of the County wherein the jury is to be drawn.

It is the considered opinion of the Court that the aforementioned allegations, even if accepted as true, are insufficient upon which to found a removal to this Court under 28 U.S.C. § 1443. Reviewing the history of this removal provision in the two companion cases of Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1965) and City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1965), the Supreme Court of the United States has made it plain that the scope of the provision is highly circumscribed and permits of removal only in specific and well defined circumstances.

■ As interpreted by the Supreme Court in City of Greenwood v. Peacock, *supra*, at 821, 86 S.Ct. 1800 subsection (2) of Section 1443 permits of removal only by federal officers and those acting under them. The State charges against petitioner having arisen out of his alleged conduct as an official of the City of Pittsburgh, this subsection is inapplicable to him. Accordingly, if petitioner were entitled to removal, it could only be pursuant to subsection (1) of Section 1443.

■ Subsection (1) affords a right of removal to any person who is denied or cannot enforce in the courts of a State "a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof." Interpreting the scope of this subsection, the Supreme Court stated in Georgia v. Rachel, *supra*, 384 U.S. at 792, 86 S.Ct. at 1790:

> "On the basis of the historical material that is available, we conclude that the phrase 'any law providing for * * * equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality. Thus, the defendants' broad contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443, because the guarantees of those clauses are phrased in

*terms of general application available to all persons or citizens, rather than in the specific language of racial equality that § 1443 demands.* As the Court of Appeals for the Second Circuit has concluded, § 1443 'applies only to rights that are granted in terms of equality and not to the whole gamut of constitutional rights * * *' 'When the removal statute speaks of "any law providing for equal rights," it refers to those laws that are couched in terms of equality, such as the historic and the recent equal rights statutes, as distinguished from laws, of which the due process clause and 42 U.S.C. § 1983 are sufficient examples, that confer equal rights in the sense, vital to our way of life, of bestowing them upon all.' [People of State of] New York v. Galamison [2 Cir.] 342 F.2d 255, 269, 271. See also Gibson v. Mississippi, 162 U.S. 565, 585–586 [16 S.Ct. 904, 40 L.Ed. 1075]; Kentucky v. Powers, 201 U.S. 1, 39–40 [26 S.Ct. 387, 50 L.Ed. 633]; City of Greenwood v. Peacock [384 U.S. 808] 825 [86 S. Ct. 1800]." (Emphasis supplied.)

We think it most apparent that petitioner herein does not seek the protection of any law providing for specific civil rights stated in terms of racial equality. He is Caucasian, and he is charged with abusing a public trust by engaging in conduct which, by the wildest flight of imagination, could not be regarded as an exercise of a federally protected right of racial equality. What petitioner does assert, his right under the Fourteenth Amendment to due process and a fundamentally fair trial in the State jurisdiction, cannot, under Georgia v. Rachel, *supra*, support a valid claim for removal.

█ In the case of City of Birmingham, Alabama v. Croskey, 217 F.Supp. 947 (N.D.Ala.1963), removal was sought on allegations similar to ones raised here, that an impartial trial could not be obtained in the State jurisdiction because of a prejudicial atmosphere created by newspaper publicity and the acts and statements of various public officials. Removal was denied, the Court stating

therein at 951, "(I)t is well established that complaints of conspiracy, or prejudice, or adverse publicity, or all of them, cannot avail as grounds for removal of a criminal prosecution from State to Federal Court. (Citations omitted.)." Claims of prejudicial pre-trial publicity and local prejudice were similarly rejected as insufficient upon which to found removal in the more recent cases of Arkansas v. Shaddox, 261 F.Supp. 566 (W. D.Ark.1966) and Powell v. State of Arkansas, 310 F.Supp. 142 (W.D.Ark. 1970).

██ Nor can removal be founded on the contention that the laws of Pennsylvania, in excluding from jury eligibility those who are not on lists of taxables, deprive petitioner of equal protection of the law under the Fourteenth Amendment. Only violations of the equal protection clause which involve discrimination based upon race afford a basis for removal. Peacock v. City of Greenwood, 347 F.2d 679, 682 (5th Cir. 1965), rev'd on other grounds, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966). Sections 6 and 9 of the Act of May 11, 1925 do not, on their face, discriminate in terms of race. See Chestnut v. People of State of New York, 370 F.2d 1 (2d Cir. 1966). And, even if the exclusion of "non-taxables" could be shown, in practice, to result in racial discrimination, petitioner would not be a member of the race discriminated against nor does he even allege that he is a member of the class of "non-taxables." See Heymann v. State of Louisiana, 269 F.Supp. 36 (E.D.La. 1967).

█ The Court likewise finds that the remaining allegations of the Petition fail to set forth a basis for removal. At best, these remaining allegations, directed to actions of prosecuting and judicial authorities and to the operation of a Pennsylvania procedural rule of waiver of objections, raise colorable claims under the due process clause of the Fourteenth Amendment but do not suggest a discrimination against any class of persons, in violation of the equal protection clause. Hill v. Commonwealth of Pennsylvania,

183 F.Supp. 126, 129 (W.D.Pa.1960), State of Maryland v. Kurek, 233 F.Supp. 431 (D.Md.1964). Thus, the immediate criminal prosecution is not subject to removal on the basis of these remaining allegations either.

Concluding that this State criminal proceeding has been improvidently removed to the Federal District Court, we turn our attention to petitioner's alternative requests for injunctive, declaratory or other relief. It has been recognized by the Supreme Court of the United States that "federal interference with a State's good faith administration of its criminal laws is peculiarly inconsistent with our federal framework." Dombrowski v. Pfister, 380 U.S. 479, 484, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1964). It is ordinarily to be assumed that one who stands accused of State offenses will be afforded a full opportunity to raise constitutional defenses in the course of the State criminal proceeding, for the State courts as well as the federal courts are beholden to apply the Constitution as the supreme law of the land. Only exceptional circumstances will "warrant cutting short the normal adjudication of constitutional defenses in the course of a criminal prosecution." Dombrowski v. Pfister, supra, at 485, 85 S.Ct. at 1120.

■ In the limited circumstances of the Dombrowski case, the Supreme Court of the United States found that a federal district court possessed authority to enjoin planned multiple prosecutions under a sweeping State subversive activities law, the mere threat of prosecution under which was regarded as having a chilling effect upon the exercise of freedom of expression under the First Amendment. No similar exceptional circumstances are present here. Here, First Amendment freedoms are not in question, there is only one criminal prosecution, and the criminal proceeding is pending and not merely threatened. We conclude that no irreparable harm will result to petitioner by relegating him to the State forum for a determination of the due process questions raised here, and, accordingly, petitioner is not entitled to either injunctive

or declaratory relief here. Toth v. Silbert, 184 F.Supp. 163 (N.D.Ohio 1960), Poore v. State of Ohio, 243 F.Supp. 777 (N.D.Ohio 1965).

We remand this case with the utmost confidence that the Court of Common Pleas of Allegheny County will afford to petitioner every right to due process and a fair trial in the pending criminal proceeding. The Judges of the Court of Common Pleas are most competent, sincere, and devoted to the cause of justice. The instant allegations that the news media have conspired to impair petitioner's trial and that the prosecution and judiciary have conferred to petitioner's prejudice are the very barest of conclusions, and we have serious doubts as to whether they could be established by evidence in this or the State Court. Nevertheless, if proven, the claims are not without remedy in the latter.

With respect to the published accounts by the news media, petitioner has urged this Court to exercise some of the controls delineated in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). As petitioner is well aware, the decision of the Supreme Court of the United States in the Sheppard case is not an authorization for unlimited judicial control of the press. Stressed there was the control which the judiciary may be expected to exercise over the courtroom and premises of the courthouse and also the counsel, witnesses and government officials involved in a criminal proceeding. Other than by stating that a judge, upon cause, should warn the news media to check the accuracy of accounts of questionable veracity, the Supreme Court made no suggestion that pre-trial publicity by the news media could be subjected to any direct control by the judiciary.

■ It is certainly within the realm of possibilities that, through an accommodation between the judiciary and the news media, the latter would agree to a self-imposed control of pre-trial publicity. However, we have no question but that such an accommodation should be sought through the offices of the State

rather than Federal Court where State criminal proceedings are involved. Certainly, controls over the courtroom atmosphere and the conduct of the participants in the imminent trial of petitioner should be sought from the State Court. And, if it is petitioner's contention that the inherent nature of the past publicity relative to his impending trial has rendered a fair trial impossible at present, he should present this contention and make an appropriate request for a change of venue to the State Court, something he has not yet seen fit to do.

Petitioner's contention, if proven, that ex-parte consultation between the prosecution and certain Judges of the Court of Common Pleas have been to the prejudice of petitioner, is not without remedy in the State Court. Petitioner can seek the supplantation of the District Attorney by a prosecutor from another county, if the right to this extreme relief can be adequately demonstrated. Likewise, if necessary, disqualification of the challenged jurists may be sought. The Court of Common Pleas of Allegheny County is a multiple complement court with six judges sitting in the Criminal Division. In addition, visiting judges from surrounding counties are currently sitting upon twenty per cent of the cases in the Criminal Division.

 Petitioner also may raise the issue of the composition of the jury by utilizing the Pennsylvania procedure for challenging the array of jurors at trial. With this procedure available, there is no basis for a prediction by this Court that the Court of Common Pleas of Allegheny County and Superior and Supreme Courts of Pennsylvania will not fully vindicate the federal right of petitioner to have a jury constituted in accordance with federal constitutional standards.

Where, as here, there exists the opportunity to test the representative nature of the jury in the State court, the federal courts are forbidden to prejudge this issue while it yet remains open for determination by the state court. City of Greenwood v. Peacock, *supra*, Georgia v. Rachel, *supra*; Georgia v. Birdsong et al., 428 F.2d 1223 (5th Cir. 1970).

If, having presented to the Court of Common Pleas all constitutional questions asserted herein, petitioner finds that he has not received due consideration therein, he, of course, has a remedy of appeal to the State appellate courts and, ultimately, to the Supreme Court of the United States. Also available is his right subsequent to trial and the exhaustion of his State remedies to seek a writ of habeas corpus in the Federal District Court.

Assuming as we must that all of the facts alleged in the Petition are true, the relief requested herein must be denied and the cause remanded to the Court of Common Pleas of Allegheny County, Pennsylvania, as having been improvidently removed from the State jurisdiction to the Federal District Court. An appropriate Order is entered.

### ORDER

Now, this 17th day of June, 1970, treating the Motion to Dismiss filed by the District Attorney of Allegheny County as a motion to remand, it is ordered that said Motion be and the same is hereby granted, and all relief requested in the Petition for Removal is hereby denied.

It is further ordered that the Clerk of Court return to the Clerk of Courts of Allegheny County, Pennsylvania, all State records previously forwarded to this Court relative to this proceeding.